Not For Publication                                    (Docket Nos. 23, 28)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | | |
|---|---|---|
| JORGE LUIS RAMOS ORTIZ and FRANSISCO MARTINEZ, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | 06-3062 |
| | : | |
| | : | |
| CARMEN PARAMO, MARTIN J. CATALANO FARMS, LLC., and MARTIN CATALANO, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**KUGLER, United States District Judge:**

Plaintiffs Jorge Luis Ramos Ortiz ("Ortiz") and Fransisco Martinez ("Martinez") are farm laborers who resided at a labor camp run by Defendant Carmen Paramo ("Paramo") while working at Defendant Martin J. Catalano Farms LLC, owned and operated by Martin Catalano ("Catalano") (collectively, "Defendants"). Plaintiffs allege that Defendants violated the federal Migrant and Seasonal Migrant Agricultural Worker Protection Act, 29 U.S.C. § 1811 et seq. ("AWPA") and the federal Fair Labor and Standards Act, 29 U.S.C. 29 U.S.C. § 216(b) ("FLSA"), and the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56.4(a). Plaintiffs are workers who lived at a labor camp run by Paramo while working at the farm owned by Catalano. Plaintiffs allege that Paramo charged them for food and other items, and Plaintiffs allege that those charges constitute deductions from their pay, bringing their actual wages below the minimum wage in violation of FLSA. Plaintiffs also allege Paramo violated several AWPA

1

provisions in recruiting, housing, and transporting Plaintiffs.  Plaintiffs additionally allege that

Defendants Catalano and Paramo are joint employers and thus jointly responsible for each

others' potential violations of the labor laws at issue.  Before the Court now are cross motions

for summary judgment by Plaintiffs and Defendant Catalano.

## I.    BACKGROUND

Catalano has owned and operated a farm ("the farm") located at 440 Auburn Road

Pilesgrove, New Jersey since 1987; he took over the farm after his father retired.  (Catalano Dep.

at 13.)  He, and members of his family before him, have used Paramo as a farm labor contractor

("FLC") to operate labor camps and bring workers to the farm.[1]  (Catalano Dep. at 14.)

According to Catalano, the majority of laborers on the farm, between 50% and 70% of the

workers, were supplied by Paramo.  (Catalano Dep. at 9, 10.)  For providing this service, Paramo

was paid by Catalano.  Catalano testified to using another FLC as well but only rarely because

other FLCs are more expensive.  (Catalano Dep. at 7, 10.)  He testified to paying her $0.60 per

man hour for the workers she provided in 2004.  (Catalano Dep. at 7, 28.)  He believed the

money was to "cook for the guys and take[] care of them."  (Catalano Dep. at 7.)  She would also

collect unemployment during the off-season based on her work for Catalano.  (Catalano Dep. at

28.)  He was aware Paramo charged the workers she housed for meals and believed she charged

$55 per week.  (Catalano Dep. 46, 47.)  According to Catalano, this was an allowable price

because an employee of Rural Opportunities, an organization providing, among other things,

---

[1]A farm labor contractor ("FLC") is defined by the AWPA as "any person, other than an
agricultural employer, an agricultural association, or an employee of an agricultural employer or
agricultural association, who, for any money or other valuable consideration paid or promised to
be paid, performs any farm labor contracting acivitty," which is "recruiting, soliciting, hiring,
employing, furnishing, or transporting any migrant or seasonal agricultural worker."  29 U.S.C. §
1802(6), (7).  It is undisputed that Paramo was viewed as an FLC.

services to farmworkers in New Jersey, told him this, and he had seen it in something "the government sends [] out, with the internal revenue." (Catalano Dep. at 46.) With respect to the operating procedures at the Camp, Catalano believed Paramo was "on her own down there." (Catalano Dep. at 16.)

Paramo's labor camp was located at 244 Swedesboro Road, Monroeville, New Jersey ("the camp"). Paramo testified she had worked for 46 years running labor camps, and had worked the Camp at issue for the past fifteen or sixteen years. (Paramo Dep. at 15.) Paramo allowed anyone on her camp if they were willing to work, but if they did not work she would not house them. (Paramo Dep. at 90.) She has dealt exclusively with workers from Puerto Rico since 2003. (Paramo Dep. at 24.) She asserted all of the workers who lived at the Camp went to work for Catalano at his farm, but he would sometimes send them to other farms if he did not have enough work to be done on a particular day. (Paramo Dep. at 15.) Paramo described the working procedure between Catalano and herself as follows: he would call her asking for workers, and if she had some she would say yes, and if she didn't she would say no. (Paramo Dep. at 72.) She asserted she was paid $.0.50 per man hour, and if a worker didn't work, he would not get paid. (Paramo Dep. at 47.) Paramo testified that she registered every year to be an FLC in May, and she did this on her own without being told by Catalano. (Paramo Dep. at 92-93.)

Paramo testified she charged workers $55 per week for three meals everyday. (Paramo Dep. at 26-27.) She stated that if a worker did not want to pay, he could choose not to but would not be provided food. (Paramo Dep. at104.) She denied she charged anything for housing or cleaning. (Paramo Dep. at 28, 44.) She also claimed she would not charge the workers for alcohol or cigarettes, and the only thing she did sell to the workers was juice boxes for $0.50.

3

(Paramo Dep. at 40, 41.)  She said she would sometimes drive workers to the store to buy

cigarettes but would not charge them.  (Paramo Dep. at 43.)

      Plaintiff Ortiz claims to have come to New Jersey from Puerto Rico in July of 2004.

(Pls.' Br. Ex. B at 3.)  He said he was approached by Jessie Garcia, a former employee of

Catalano, who had heard there was farm work available on Catalano's farm.  (Id.)  He claims

that Paramo bought a plane ticket for him.  (Id.)  Paramo denies buying this plane ticket.

(Paramo Dep. at 51.)  She testified to buying two other workers' plane tickets because she knew

they were honest and would pay her back.  (Paramo Dep. at 51.)  She asserts Ortiz came with a

group of seven others from Puerto Rico, and the only knowledge she had of Ortiz, prior to his

presence at the Camp, was phone conversations with Juan Pagan, a contact of hers in Puerto

Rico.  (Paramo Dep. at 53, 66-7.)

      Martinez was homeless prior to coming to the Camp.  (Paramo Dep. at 61.)  He came to

the Camp through Rural Opportunities.  Martinez arrived at Paramo's camp on May 25, 2006

and worked until October 20, 2006.  (Paramo Dep. at 61; Martinez Dep. at 10, 11.)  Martinez

testified that on his first day, he was told the basics of the job and what he would be paid.

(Martinez Dep. at 12.)  He was paid $6.15 until October 1st and $7.15 until he left.  (Martinez

Dep. at 13.)  He filled out a W4 form, an Immigration and Nationalization Eligibility

Verification form, and a pesticide safety information form.  (Martinez Dep. at 14, 17, 21.)  He

had filled out similar forms after he first left Puerto Rico and worked at a farm in Florida.

(Martinez Dep. at 44.)  Upon leaving Catalano's farm and Paramo's camp, he applied for and

received unemployment.  (Martinez Dep. at 37-8.)

      Plaintiffs claim that though they disliked Paramo and the camp, they could not continue

to work without the room and board provided through the camp. (Pls.' Br. Exs. A, C.)  Workers

4

would receive their wages in cash on Friday in an envelope along with a pay stub, and usually this pay would be handed out at the camp by Paramo.  (Paramo Dep. at 36.)  Workers would come in one by one and receive their envelope.  (Paramo Dep. at 31.)  In order to receive their money, they had to sign a paper which stated, in English and Spanish, that they had received their pay without deductions.  (Martinez Dep. at 28.)  After receiving their pay, Paramo would collect $55 from each worker each week for meals.  (Paramo Dep. at 36.)  Plaintiffs allege she also took out money for other purchases they had made from her throughout the week including cigarettes and alcohol.  (Pls.' Br. Ex. A at 2.)   Martinez testified Paramo would fine the workers $40 if they missed a day of work.  (Martinez Dep. at 46.)

Workers would often be transported to Catalano's farm in a van owned by Paramo. (Paramo Dep. at 16.)  The van was often driven by a fellow worker named Alfredo Ortiz. (Paramo Dep. at 16; Pls.' Br. Ex. B at 2.)  Periodically, Catalano would drive the workers in a pick-up truck.  (Paramo Dep. at 20.)  In 2004 workers would often be transported by Luis Flores Costano in his own van.  (Paramo Dep. at 22.)  Catalano remembers seeing Ortiz getting a ride to work with his friend Luis Perez.  (Catalano Dep. at 18.)

Plaintiffs Ramos Ortiz and Martinez filed this case on July 7, 2006, and they amended their Complaint on November 1, 2006.  Defendant Catalano answered on December 29, 2006 and filed a motion for summary judgment on February 29, 2008.  Plaintiffs filed a cross-motion for summary judgment against all Defendants on April 7, 2008.  Defendant Paramo answered Plaintiffs' Complaint on December 15, 2007, and she has not filed any motions or responded to the motions presently before the Court.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

When parties file cross-motions for summary judgment, the court must apply the summary judgment standard to each party's motion individually. See Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). Where review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 145-46 (3d Cir. 1988)).

## III.   DISCUSSION

As an initial matter, the Court will address a variety of miscellaneous requests by the parties. First, Plaintiffs include in their motion a request to conform the pleadings to the evidence. This motion is granted; Plaintiffs seek to specifically add a subset of the general AWPA claims already generally plead in the Complaint. (Am. Comp. ¶¶ 36-41.) Catalano includes a request for dismissal for failure to meet citizenship requirements of diversity jurisdiction. (Catalano Reply Br. at 23.) This request is clearly without merit–this action was brought pursuant to a federal statute, and the Court has supplemental jurisdiction over the state law claims. Catalano's request for dismissal is denied. Catalano also seeks summary judgment or dismissal of the claims of Plaintiff Ramos Ortiz, arguing that Ramos Ortiz's responses to

requests for admissions in discovery were not truthful and so fall under Federal Rule of Civil
Procedure 37(c)(2).  Catalano seeks attorneys' fees on this basis.  The Court will not conclude at
this time that Ramos Ortiz's responses constitue a failure to admit; Ramos Ortiz answered the
questions and provided explanations where necessary, as expressly permitted by the Federal
Rules.  Fed. R. Civ. P. 36(a)(4).  ("A denial must fairly respond to the substance of the matter;
and when good faith requires that a party qualify an answer or deny only a part of a matter, the
answer must specify the part admitted and qualify or deny the rest.")  (Catalano Ex. G.)
Catalano's request amounts to a request for discovery sanctions, which is denied.

Having disposed of such preliminary matters, the Court now turns to the heart of the
motions currently pending.  Defendant Catalano seeks summary judgment on Plaintiffs'
complaint in its entirety.  Plaintiffs seek summary judgment on a variety of claims under the
FLSA, NJWHL, and AWPA.  They do not seek summary judgment on the negligence claims
against Paramo, who has filed no motion or response to the pending motions to date.

## A.     FLSA Claims

Plaintiffs seek summary judgment on the issue of whether Defendants violated the FLSA
and the NJWHL for deductions from Plaintiffs' wages for meals, cigarettes, and alcohol.  The
Court applies the same analysis to the FLSA claims and the NJWHL claims.  See Maldonado v.
Lucca, 629 F. Supp. 483, 485 (D.N.J. 1986) (considering plaintiff farmworkers' FLSA and
NJWHL claims together and bifurcating the issue of potential damages).

The first determination for the Court to make is whether Catalano or Paramo was
Plaintiffs' employer or whether both acted as joint employers.  The totality of the relationship
between the parties must be examined, and no one factor is dispositive.  Rutherford Food Corp.
v. McComb, 331 U.S. 722 (1947).  A joint employment relationship is generally deemed to exist

(1) where one employer is acting directly or indirectly in the other's interest in relation to the employee and (2) where the employers are "not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer."  Maldonado, 629 F. Supp. at 487; 29 C.F.R. § 791.2(b)(2), (3).  Moreover, under the FLSA, employment relationships are to be construed broadly.  See, e.g., Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 326-28 (D.N.J. 2005).

Additionally, the Third Circuit has adopted a six-factor test originally laid out by the Ninth Circuit to determine a party's employee status.  Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1382 (3d Cir. 1985); Donovan v. Sureway Cleaners, 656 F.2d 1368, 1371 (9th Cir. 1981).  That test requires consideration of:  1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.  DialAmerica, 757 F.2d at 1382 (quoting Sureway Cleaners, 656 F.2d at 1370).

Plaintiffs contend that the Court should also consider three additional factors cited by the United States Department of Labor as relevant to the question of joint employment:  1) whether the alleged employer has the power to hire, fire, or modify the employment conditions; 2) whether the work is performed on the alleged employer's premises, rather than on premises owned or controlled by another entity; and 3) whether the alleged employer undertook responsibilities commonly performed by employers, such as preparing payroll, issuing pay

checks; providing workers' compensation insurance, and providing the tools and equipment required for the job.  (Pls.' Br. at 41.)

Plaintiffs contend that in this context, an FLC such as Paramo is customarily assumed to be an employer and the question is whether the farmer is also an employer.  (Pl.'s Br. at 37.) Plaintiffs argue that Catalano has admitted to being their employer and the question is whether Paramo was also an employer.  The evidence shows that Paramo recruited the workers, housed them, transported them to the farm, and provided meals for which she charged the workers.

Catalano's argument is less clear.  On the one hand, he asserts that Paramo as an independent contractor retained all control over where Plaintiffs were sent to work.  (Catalano Reply Br. at 17.)  On the other hand, he admitted in his answer that Plaintiffs were "seasonal employees" of the farm (Ans. ¶¶ 3, 4) and indicated that he kept payroll records, determined pay rates and paid employees, controlled the workers while on his farm, supervised their work, and retained the right to hire, fire, or modify the employment conditions of the workers.  (Catalano Reply Br. at 14-15.)[2]

The Court concludes that Catalano was Plaintiffs' employer.  Catalano controlled whether Plaintiffs had work, supervised that work on his land, prepared payroll records and pay checks, and used Plaintiffs' labor as an integral part of his business.  The Court concludes that Paramo was also Plaintiffs' employer.  Paramo recruited Plaintiffs, housed them, provided meals for which she charged, provided transportation to the farm, and coordinated with Catalano as to when work was to begin for the season and for each day and how many workers were needed.

---

[2] Catalano spends much of his argument focusing on Paramo's status as an independent contractor.  That Paramo also served as an independent contractor to Catalano does not affect her status as potential joint employer of Plaintiffs.  Catalano does not appear to dispute Paramo's status as a putative FLC rather than as simply an employee of Catalano's.

She also facilitated providing the workers their pay each week.  Catalano and Paramo were not

"completely disassociated" with regard to Plaintiffs' employment, and in fact they shared control

over Plaintiffs.  The totality of the circumstances show that Plaintiffs were dependent upon

Paramo as well as Catalano for their continued employment.  29 C.F.R. § 791.2(b)(2), (3).  Thus,

Catalano and Paramo were joint employers.  See also Antenor v. D & S Farms, 88 F.3d 925

(1996) (analyzing factors and determining that plaintiff farmworkers were joint employees of

FLC and farmers where "significant aspects of the relationship"showed that farmworkers were

economically dependent on both the FLC and the farmers).

The Court determines that joint employment existed here with regard to the specific

evidence in this case but also mindful of the statutory framework.  As noted before in this

District in Maldanado, where an agricultural employer and a farm labor contractor were found to

be joint employers of the laborer plaintiffs,

> While the [AWPA] does apportion certain responsibilities to a "farm labor
> contractor" and others to an "agricultural employer," Congress' plain intent was
> to protect migrant and seasonal workers from abuse and exploitation, and to hold
> "agricultural employers" fully accountable as joint employers whenever the facts
> suggest that liability is fairly imposed. . . Migrant and seasonal workers are an
> important component of the agricultural labor force in New Jersey.  Just like any
> other workers, they are entitled to receive at least the minimum wage for the
> hours they work and to be treated fairly and humanely by the businesses which
> profit from their physical efforts.  The federal statutory scheme, constructed with
> the rights of these workers in mind, dictates that any farmer who employs migrant
> or seasonal workers through a crew leader be held jointly liable for any
> noncompliance with wage and hour laws.  The court is aware that defendants [ ]
> and their counterparts will have to change aspects of the way they run their
> businesses as a result of the court's decision.  However, this added administrative
> burden pales in comparison to the injustice suffered by migrant and seasonal
> workers who are underpaid in the first instance and who cannot realistically
> recover unpaid wages from a crew leader who is undercapitalized and nowhere to
> be found.

Maldonado, 629 F. Supp. at 488.  As in Maldonado, Paramo found the workers, fed and housed

them, transported them to Catalano's farm, and took deductions from their pay.  Plaintiffs'

involvement with Catalano's farm was in no way disassociated with their involvement Paramo,

and both Catalano and Paramo benefitted from this operation.  Joint employment existed, and as

in Maldonado, Catalano and Paramo will be "fully accountable as joint employers" and liability

may be "fairly imposed" for violations of the laws governing Plaintiffs' employment.

Because Catalano and Paramo were joint employers, they shared responsibility for

compliance with the FLSA, and they shared responsibility for ensuring that any deductions made

from employee pay did not reduce the pay to below the minimum wage.  When meals or other

services are provided by an employer, the reasonable cost of the meals may be credited against

the employer's minimum wage obligations.  Donovan v. The New Floridian Hotel, Inc., 676

F.2d 468, 474 (11th Cir. 1982).  The employer has the burden of showing the reasonable cost of

such deductions.  Id. at 474, 475 n.12.  An employer must also maintain records reflecting

additions or deductions from wages for services such as meals.  See also Reich v. Chez Robert,

Inc., 821 F. Supp. 967, 977 (D.N.J. 1993) (vacated in part on other grounds, 28 F.3d 401 (3d Cir.

1994)).

It is undisputed that Paramo charged Plaintiffs $55.00 per week for meals.  It is

similarly undisputed that Paramo kept no receipts or records to substantiate the actual cost of

providing the meals.  As explained above, Catalano and Paramo were joint employers, and thus

they jointly shared a responsibility to ensure that the meal deductions were reasonable and that

any profit realized from the meal charge did not reduce the employees' wages below the

minimum.  An employer must show an entitlement to credits against the minimum wage, and in

light of the undisputed fact that no records were kept regarding the meal charges, the Court finds

that Plaintiffs are entitled to summary judgment on their FLSA claim against both Catalano and

Paramo based on the weekly meal charges.

Plaintiffs additionally claim that Paramo deducted pay for other non-itemized charges. Issues of fact prevent the Court from reaching any conclusions as to these charges, and summary judgment is only granted on the claims based on the deductions for the meal charges.  Because some issues regarding the other potential deductions remain, the Court will not make any conclusions as to damages at this time.

**B.     AWPA Claims**

Plaintiffs seek summary judgment on their claims under 29 U.S.C. § 1821, the provisions of which impose disclosure and reporting requirements on farm labor contractors and agricultural employers. Plaintiffs argue that Catalano and Paramo violated § 1821(a), which imposes written disclosure requirements on recruiters regarding information including the place of employment, the wage rates to be paid, the crops and kinds of activities on which the worker may be employed, the period of employment, and the transportation and housing benefits to be provided and any costs to be charged for each of them; § 1821(d), which requires farm labor contractors and agricultural employers to keep itemzied pay records for each worker for three years and to provide an itemized pay stub to each employee each pay period; and 1822(a), which requires wages to be paid to agricultural workers when they are due. Plaintiffs further contend that Catalano violated § 1842, which requires agricultural employers using FLCs to first use reasonable steps to determine that the farm labor contractor possesses a certificate of registration which is valid and which authorizes the activity for which the contractor is utilized. Finally, Plaintiffs contend that Paramo violated § 1811(a) and (b), which require FLCs and those individuals they employ to have a certificate of regisiration from the Secretary of Labor; and § 1821(c) and (e), which require posted notice of housing requirements by housing providers and

12

maintenance of pay records by farm labor contractors.

1.      **Written Disclosure Requirements for Recruiters 29 U.S.C. § 1821 (a)**

It is disputed whether Catalano and Paramo provided most of the information required by § 1821(a).  Catalano does not appear to argue that he was not required to comply with § 1821(a); rather, he argues that he provided the required information to workers on their first day at his farm. Plaintiffs argue that these written disclosures were required to be provided before Ramos Ortiz left Puerto Rico and before Martinez left Rural Opportunities to go to the Camp or the Farm. There is no evidence that any of the written disclosures requirements were met at any time. Paramo testified that she never gave out any written solicitations to Juan Pagan, her contact in Puerto Rico, or Rural Opportunities.  (Paramo Dep. at 103.)  She asserts that workers used to approach Pagan and ask for work, and he would send them to Paramo.  (Paramo Dep. at 48.) Catalano testified that he never gave Paramo any documents explaining the work to give the workers.  (Catalano Dep. At 23-4.)  Catalano did indicate that he maintained a bulletin board with various information on it, and Plaintiff Martinez testified that Catalano did tell him some of the information required to be disclosed by § 1821(a).  However, "[w]hile oral disclosures may undoubtedly supplement and enhance the recruitment process and the prospective worker's understanding and familiarization with the specific contractor's employment policies and needs, there is no provision in the [AWPA] for the substitution of the delivery of written documentation with oral interviews."  Villalobos v. North Carolina Growers Ass'n, Inc., 252 F. Supp. 2d 1, 16 (D. Puerto Rico 2002).

There is a dearth of evidence regarding the information, if any, provided to Plaintiff Ramos Ortiz in Puerto Rico and the information, if any, provided to Plaintiffs when the arrived at Paramo's camp and Catalano's farm.  Plaintiffs have not provided testimony that the written

disclosures were not provided, and Catalano has not provided any evidence that they were. The Court will deny the requests of both parties for summary judgment on the claims under § 1821(a).

**2.      Recordkeeping Requirements for Employers under 29 U.S.C. § 1821(d)**

Catalano has produced evidence of pay stubs showing itemized withholdings and has stated that he provided the additional required information about wage rates, transportation, and the types of work to be done when workers arrived on their first day of work.  However, there is no evidence that he retained these records for the required period of time and, as noted, it is undisputed that Paramo did not retain any records itemizing the various deductions she took from workers' pay.

Moreover, the Court has already found that Catalano and Paramo were joint employers of Plaintiffs.  Therefore each had an obligation to ensure that deductions were appropriately represented on Plaintiffs' pay stubs.  It is undisputed that Paramo did not provide Plaintiffs with records of the actual costs of their meals.  Though Plaintiffs received their pay and then turned the $55 over to Paramo, this charge is still considered a deduction.  See Escobar v. Baker, 814 F. Supp. 1491, 1506 (W.D. Wash. 1993) (noting that "to make a technical distinction between money deducted before paychecks are issued and money requested after paychecks are issued is to disregard the purpose of the AWPA" and finding that money requested after pay has been issued is a "sum withheld" within the coverage of § 1821(d)).  These records were required to be kept under § 1821(d) and provided to Plaintiffs, and this was not done.  Accordingly, Plaintiffs are entitled to summary judgment on their claims against Catalano and Paramo under § 1821(d).

**3.      Requirement that Wages Be Paid When Due under 29 U.S.C. § 1822(a)**

Plaintiffs are entitled to summary judgment on their claims under § 1822(a), because the

Court has already determined that Catalano and Paramo are not entitled to a meal credit against their obligation to pay the minimum wage because they could not provide evidence of the actual cost of providing the meals.  Thus, the $55 charged to each Plaintiff each week represents an inappropriate deduction taken from their wages and a violation of § 1822(a).

### 4.      Notice Requirements for Housing Providers under 29 U.S.C. § 1821(c)

Plaintiffs are also entitled to summary judgment on their claim against Paramo under § 1821(c).  While Paramo testified that she had requirements for workers wishing to stay at the Camp, it is undisputed that these requirements were not publicized in any way.  (Paramo Dep. at 90 (testimony that anyone could come to the camp as long as they would go to work).) Therefore, Plaintiffs are entitled to summary judgment on this claim against Paramo.

### 5.      Requirements that FLC Provide Records to Agricultural Employer under 29 U.S.C. § 1821(e)

As discussed above, Paramo did not keep records as required under § 1821(d)(1) of "the specific sums withheld and the purpose of each sum withheld" for each worker.  Because such records did not exist, they were not provided to the agricultural employer (Catalano) as required by § 1821(e).  Plaintiffs are entitled to summary judgment on this claim.

### 6.      FLC Registration Requirements under 29 U.S.C. § 1811, 29 U.S.C. § 1842

Paramo was required to be registered as an FLC and only use other registered FLCs to perform recruiting and transporting activities. Catalano was required to ensure Paramo's FLC registration before contracting with her to perform FLC activities.[3]

--------------------------------------------

[3]  Catalano argues that his relationship with Paramo for over twenty years "without any complaints filed either in state or federal courts from any other workers other than Plaintiffs" was enough to verify Paramo's FLC status.  This argument is more than unavailing–it evidences a clear disregard for the law.  Agricultural employers are not permitted to rely on a relationship

When discussing his verification of Paramo's FLC registration card, Catalano testified that he would "grab the card for the year" and "occasionally" copy it. (Catalano Dep. 15:20-16:11). He further noted that he couldn't "tell if [the registration cards] were good or not" but that he relied on Paramo's experience and reliability. (Catalano Dep. 16:19-23.) Catalano further testified that, at least in 2005 and 2006, he would look at the registration listings on the internet in the fall, after the harvest season was over, to assure himself that Paramo was on the "good list" of FLCs with valid registrations. (Catalano Dep. 31:6-25.) Paramo testified that she always renewed her FLC registration. There is evidence in the record that Paramo registered in 2004 and on July 11, 2006 for the 2006 season.

There are disputed issues of fact the issue of Paramo's registration and Catalano's responsibility to verify that registration. Paramo claims to have registered as an FLC for the years 2004, 2005, and 2006, though Plaintiffs contend that there is not evidence other than her testimony that she registered in 2005. Catalano took some actions to verify Paramo's FLC registration status. A finder of fact must evaluate whether Paramo did indeed register and whether Catalano's attempts to verify that registration were reasonable. Summary judgment will not be granted to either party on the claims under 29 U.S.C. § 1811(a) and 29 U.S.C. § 1842.

Plaintiffs will be granted summary judgment against Paramo on their claim under 1811(b), because it is undisputed that the individuals used by Paramo to recruit workers in Puerto Rico and to drive the workers from the camp to the farm were not registered as required by that provision of the AWPA.

_____

or a reputation and are ultimately responsible under the AWPA for taking reasonable steps to ensure the registration status of the FLCs they utilize.

**IV.     CONCLUSION**

As detailed above, Catalano and Paramo both served as Plaintiffs' employers and had corresponding employer obligations imposed by the FLSA, the NJWHL, and the AWPA.  The undisputed evidence in the record regarding the meal charges deducted from Plaintiffs' wages leads this Court to grant Plaintiffs summary judgment on their claims against Catalano and Paramo under the FLSA and the NJWHL.   Plaintiffs are also granted summary judgment on their claims against Catalano and Paramo for violations of the AWPA at 29 U.S.C. § 1821(d) and  § 1822(a).  Plaintiffs are granted summary judgment on their claims against Paramo for violations of 29 U.S.C. § 1811(b) and § 1821(c) and (e).  Summary judgment is denied to both parties for the claims under 29 U.S.C. § 1811(a), § 1821(a), and § 1842.

Plaintiffs have been awarded summary judgment on multiple claims for which they may be awarded damages, but because there are claims on which summary judgment has not been granted to either party, the Court will not determine the amount of damages to be awarded at this time.

Date: _____9-19-08_____          ____/s/ Robert B. Kugler____
                                      ROBERT B. KUGLER
                                      United States District Judge