NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| JORGE LUIS RAMOS ORTIZ, et al., | : | |
| Plaintiffs, | : | Civil No. 06-3062 (RBK/AMD) |
| v. | : | **OPINION** |
| CARMEN PARAMO, et al., | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

Plaintiffs Jorge Luis Ramos Ortiz ("Ramos") and Francisco Martinez ("Martinez") (collectively, "Plaintiffs") are migrant farm workers who lived at a labor camp operated (but not owned) by Defendant Carmen Paramo ("Paramo") while working at a farm owned by Defendants Martin J. Catalano Farms, LLC ("Catalano Farms") and Martin Catalano ("Catalano") (collectively, "Defendants"). Plaintiffs bring this lawsuit alleging that Defendants violated the Federal Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801, et seq., the Federal Fair Labor and Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New Jersey Wage and Hour Law ("NJWHL"), N.J. STAT. ANN. § 34:11-56, et seq. Additionally, Ramos claims personal injuries as the result of Paramo's negligence.

**I.      BACKGROUND**

On September 19, 2008, the Court entered summary judgment in favor of Plaintiffs and against Defendants on a number of claims:

1

      1.      Because no records were kept regarding the reasons for deducting $55 per week from Plaintiffs' pay (allegedly for meals), Defendants violated the AWPA, FLSA and NJWHL.

      2.      Because Paramo never provided written disclosures, she violated the AWPA.

      3.      Because Paramo did not use registered Farm Labor Contractors in recruiting workers in Puerto Rico or for transporting Plaintiffs between the camp and the farm, she violated the AWPA.

The Court also determined that Defendants were joint employers and therefore would be jointly responsible for damages for violations of NJWHL and FLSA. Left for trial was the issue of damages and other AWPA claims either not raised in the motions for summary judgment or for which the Court denied summary judgment. Also remaining for trial were Ramos's negligence claims.

Plaintiff's "Original Complaint" contained a jury demand. However, Plaintiffs' (Martinez was added as a plaintiff) "First Amended Complaint" dropped the jury demand. None of the Defendants requested a jury in any filing or any notice. See FED. R. CIV. P. 38. The Court conducted a bench trial on July 6 and 7, 2009. Counsel participated in the bench trial (including the negligence claims) without objections. Thus, any right to a jury trial was waived. See Main Line Theatres, Inc. v. Paramount Film Distrib. Corp., 298 F.2d 801, 804 (3d Cir. 1962), cert. denied, 370 U.S. 939 (1962).

At the conclusion of the evidence, the Court entered judgment in favor of Defendants and against Ramos on one aspect of the negligence claim – the alleged failure to provide medical care in the aftermath of an assault upon Ramos. (Order of July 9, 2009, Docket Entry 57; see Tr. of July 6, 2009 Proceedings (hereinafter referred to as "T1") at 42-25 to 44-13.) That left the remaining negligence claim – that Paramo provided alcoholic beverages to a third party, Santos Morales, knowing he would become violent and that Morales thereafter assaulted

Ramos, causing a physical injury. After the testimony and evidence, counsel submitted written supplementary findings and conclusions.

## II.     DISCUSSION

The following represents the Court's findings of fact and conclusion of law pursuant to Federal Rule of Civil Procedure 52.

### A.     Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, as well as 29 U.S.C. § 1854(a).

### B.     Ramos's Negligence Claim

1. Paramo sold alcoholic beverages on credit to Santos Morales. (T1 at 60-8.) It is not clear when this happened.

2. An unidentified male also sold beer at the camp on Fridays and some Sundays.

3. Paramo knew Morales got "aggressive" when he drank alcohol. (T1 at 58-9.)

4. Paramo was never present when Santos Morales drank alcohol. (T1 at 61-7.)

5. Santos Morales assaulted Ramos with a tire jack. (T1 at 55-19 to 61-12.) Morales had been drinking alcohol. Ramos does not know how much Morales drank. (Id.) There is no evidence that Morales was intoxicated. Paramo did not know that Morales was drinking that day. (T1 at 61-7, 76-1.)

6. Paramo permitted drinking at the camp, (T1 at 61-16), but she did not permit fighting at the camp, (T1 at 77-18).

7. It is not clear what day Morales assaulted Ramos. At some point after the assault, Ramos left the camp and moved to his sister's house in Connecticut. (T1 at 61-25 to 62-3.) Ramos did go to the emergency room at the New Britain, Connecticut General

Hospital on Sunday, September 25, 2003. (Trial Ex. Ramos 3.) There, he was given a prescription for an antibiotic and apparently instructed on bandaging the wound. (Trial Exs. Ramos 3, 4.) In another document from New Britain, Connecticut General Hospital there is an entry for "accident date/time" of "9/21/05" "03:55 p.m." However, this is not consistent with Ramos's testimony that the assault took place about four hours after they first had contact and both began drinking, (T1 at 76-4 to 77-15), and that he was injured at night, around 10:00 p.m., (T1 at 96-15 to 96:19).

        8.      Ramos still has a visible scar. (T1 at 65-17 to 65-25; Trial Ex. Ramos 6.)

        9.      **Conclusion.** Ramos failed to prove by a preponderance of the evidence that selling alcoholic beverages on some unspecified date was the proximate cause of the injuries he suffered on some unknown date near September 25, 2005. Assuming Morales was intoxicated (which was not proven), there is insufficient evidence that Paramo provided the alcohol consumed on the night in question. Accordingly, judgment of no cause of action on the remaining negligence count will be entered in favor of Paramo and against Ramos.

    **C.**    **NJWHL and FLSA Compensation Claims**

        1.      Paramo provided Ramos with an airline ticket from Puerto Rico. (T1 at 22-5 to 22-9.) Paramo required that Ramos repay her from his pay. (T1 at 23-3 to 23-12.) She charged him $165. (T1 at 54-18 to 55-13.)

        2.      Ramos was never reimbursed for the $30 he paid to get from his home to the airport in San Juan. (T1 at 22-10 to 22-18.)

        3.      Ramos worked at the Catalano farm from July 3, 2004 until November 24, 2004 (21 weeks) and from April 22, 2005 until September 22, 2005 (22 weeks). He was paid $5.15 per hour to assist in the production of goods bound for interstate commerce. (Joint Final Pre-Trial Order (hereinafter referred to as "JFPTO") at ¶ II.B(b).) Martinez worked at the Catalano farm from May 26, 2006 to approximately October 12, 2006. (Trial Ex. DC-4.)

4

Apparently he did not work from September 15, 2006 through September 28, 2006; thus he worked twenty weeks.

      4.  Catalano prepared the pay for each Plaintiff.  He would give the pay in cash in an envelope with a pay stub to Paramo, who would distribute the pay to Plaintiffs on Fridays.  The amount of pay and the pay stubs were always correct.  (T1 at 133-7 to 134-3, 85-13 to 86-10, 93-19 to 93-23, 95-12 to 96-14.)

      5.  After giving the pay envelopes to Plaintiffs, Paramo would demand reimbursement for items she sold Plaintiffs on credit during the week.  Paramo sold to Ramos every day, a pack of cigarettes ($7 a pack), four or five beers ($1 per can or bottle), and a bottle of rum ($13 a bottle).  He also purchased from Paramo toothpaste ($1), soap ($1), and toilet paper ($1).  (T1 at 23-21 to 25-17.)  Martinez purchased only beer (3-5 cans) and cigarettes every day.  (T1 at 104-5 to 105-18.)  If Plaintiffs failed to pay Paramo, they would get kicked out of camp.  (T1 at 107-25 to 108-1.)  Paramo was not licensed to sell alcohol or cigarettes.  (JFPTO at ¶ II.C.)

      6.  Plaintiffs paid other charges to Paramo.  Paramo levied fines for missing work and made loans to Plaintiffs to pay for haircuts and to buy cigarettes at a store.  (T1 at 26-23 to 27-1, 26-14 to 16, 26-8 to 26-12.)  Ramos paid Paramo about $120 per week for the items he purchased on credit and the like.  (T1 at 36-5.)  Martinez paid $95 per week for the items he purchased on credit.  (T1 at 111-16 to 111-22.)  Each Plaintiff paid Paramo $55 per week for meals (whether they ate all their meals or not).  Paramo kept no records documenting the actual costs of the meals or items purchased by Plaintiffs from her.  She did not testify and presented no evidence at trial.

      7.  Paramo gave each Plaintiff a piece of paper every week in her handwriting with only numbers on it representing how much she claimed each owed her.  (T1 at 29-4, 106-9 to 108-25.)  Plaintiffs saved a few of these slips but threw most of them away.  (T1 at 108-4 to 6, 35-8 to 19; Trial Exs. Ramos 1, 2; Martinez 1, 2, 3.)  These slips were not itemized.

8.      **Conclusions.**  The Court previously ruled that Defendants were joint employers and that the $55 meal charge violated the FLSA and NJWHL.  The Court now concludes that Defendants violated the FLSA and NJWHL by virtue of Paramo charging Plaintiffs for alcohol, beer, cigarettes, soap, toilet paper, and toothpaste.  Furthermore, Defendants violated the law by requiring Ramos to pay for transportation costs.

Employers must pay employees the prevailing minimum wage.  29 U.S.C. § 206(a)(1) (2006).  Wages include the "reasonable cost" of "board, lodging, or other facilities" furnished by employers to employees.  29 U.S.C. § 203(m); Washington v. Miller, 721 F.2d 797, 803 (5th Cir. 1983) (per curiam).  A reasonable cost for "other facilities" is no more than the actual cost of providing the facility.  29 C.F.R. § 531.3(a).  Items such as alcohol and cigarettes constitute "other facilities" under the law.  Washington, 721 F.2d at 803; Leach v. Johnston, 812 F. Supp. 1198, 1204 (M.D. Fla. 1992).

The employer has the burden of showing entitlement to any credit for the provision of such facilities.  Leach, 812 F. Supp. at 1213; see 29 C.F.R. § 516.27(a).  Where the employer does not keep records substantiating the cost of the facilities, the employer is not entitled to any credit for providing the facilities.  Reich v. Chez Robert, Inc., 821 F. Supp. 967, 977-78 (D.N.J. 1993), vacated on other grounds, 28 F.3d 401 (3d Cir. 1994).  Facilities provided in violation of any federal, state, or local laws, cannot be credited to the employer's minimum wage obligation.  29 C.F.R. § 531.31; Leach 812 F. Supp. at 1213 (citing Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 474 (11th Cir. 1982)).  Employers may not deduct as "reasonable," costs incurred providing facilities primarily for the employer's own benefit or convenience.  29 C.F.R. § 531.3(d)(1).

Under New Jersey Law, Paramo was prohibited from selling alcohol without a license, N.J. STAT. ANN. § 33:1-2(a); see N.J. STAT. ANN. § 33:1-12 (defining various types of liquor licenses), or cigarettes without a license, § 54:40A-3; see N.J. STAT. ANN. § 54:40A-2(e) ("'Retail dealer' means any person who is engaged in [New Jersey] in the business of selling

cigarettes at retail."); N.J. STAT. ANN. § 54:40A-4(h) (detailing required fee, bond, and other licensure requirements). Moreover, Ramos's cost of travel was incurred primarily for the benefit of Paramo. Accordingly, these charges were unlawfully credited towards Paramo's minimum wage obligation.

Plaintiffs are entitled to recoup these amounts. As to Ramos, forty-three weeks multiplied by $175 yields a total of $7,525. Adding the $195 transportation costs results in a total wage underpayment of $7,720.[1] As to Martinez, twenty weeks multiplied by $150 yields a total wage underpayment of $3,000. Thus, judgment pursuant to the NJWHL will be entered in those amounts in favor of each Plaintiff and against the Defendants jointly, severally, and in the alternative.

Plaintiffs also seek liquidated damages under the FLSA in an amount equal to the unpaid compensation. Liquidated damages are statutorily defined as an amount equal to the amount of unpaid minimum wages. 29 U.S.C. § 216(b). A court has discretion to refuse to award liquidated damages where the employer shows (1) good faith, and that (2) he or she had reasonable grounds for believing that the act or omission giving rise to the FLSA action was not unlawful. 29 U.S.C. § 260. As Defendants failed to demonstrate any good faith defense or that they had reasonable grounds to believe they had not violated the law, the Court finds the liquidated damages award is justified and appropriate. Accordingly, judgment will be entered in favor of Ramos and against Defendants, jointly, severally, or in the alternative, in the sum of

---

[1] Ramos's counsel mistakenly seeks only $120 per week recovery for Ramos. However, the testimony clearly revealed that the $120 per week Ramos paid Paramo did not include the $55 for the meals:

> A. For every week I could spend a hundred, around a hundred and $20 per week.
> Q. Is that including the $55 per week meal charge or not?
> A. Without including the $55.
> Q. Did he say without including?
> A. Without including the $55.

(T1 at 36-7 to 36-12; see T1 at 99-5 to 99-15.) Thus, adding $120 and $55 yields $175 per week.

$15,440. Judgment will be entered in favor of Plaintiff Martinez and against Defendants, jointly, severally, and in the alternative, in the amount of $6,000, together with reasonable counsel fees and costs.

### D. AWPA Claims

1. Neither Paramo nor Catalano directly, or through any agent, gave either Plaintiff at any time before they began working at the farm, anything in writing about the terms and conditions of their employment. (T1 at 36-13 to 36-23, T1 at 100-18 to 101-8; Transcript of July 7, 2009 Proceedings (hereinafter referred to as "T2") at 150-16 to 151-20.)

2. Paramo did not have a valid registration certificate for farm labor contracting activities for 2005 and did not receive a 2006 certificate until July 31, 2006. (Trial Exs. Ramos 8, 9; Martinez 4; JFPTO at II.B, C.) Paramo was nevertheless engaged in farm labor contracting activities in 2005 and 2006, including transporting and recruiting.

3. Catalano did not exercise reasonable steps to ensure Paramo was properly certified in 2005 and 2006. Although he testified that he asked Paramo each year for her license and made a copy of it for his files, (T2 at 96-1 to 97-7, 111-17 to 111-20), he was unable to produce the 2005 certificate. He seemed to simply "assume it was ok" because of all the inspections of the camp by governmental agencies. (T2 at 112-2.) Catalano also never noticed that the 2006 certificate did not permit Paramo to transport workers (which she did). Again, he "assumed she was ok" because "she had insurance." (T2 at 124-14.)

4. Catalano provided pesticide training to Plaintiffs. Each signed a document confirming they had received the training. (Trial Exs. DC-1, DC2, DC4.) There were booklets, pamphlets, and posters on a bulletin board, as well as a videotape. (Trial Ex. DC-3; T2 at 57-20 to 57-22, 60-3 to 60-23, 61-12 to 64-14.) Ortiz did not see the video because he "skipped out that day with another guy." (T2 at 63-21 to 64-12.) The information was readily available. (T2 at 63-20 to 64-14.)

5. Plaintiffs, through counsel, did attempt (unsuccessfully) to resolve

their disputes with the Catalano Defendants before filing this lawsuit. (Trial Ex. Ramos 10.)

      6.      Although Plaintiffs purchased most of their goods and services from Paramo, they were not required to do so. They made purchases from another vendor who visited the camp on Fridays and some Sundays. There was a store nearby that Plaintiffs visited at least once. (T1 at 114-2.) They did not have to eat at the camp. (T1 at 118-4 to 118-7.)

      7.      **Conclusions.**  Plaintiffs proved at trial that all Defendants violated some provisions of the AWPA as follows:

      a.      29 U.S.C. § 1822(a) (no evidence of the actual cost of alcohol, cigarettes, and the like) (for Ramos in 2004 and 2005 and Martinez in 2006);

      b.      29 U.S.C. § 1821(a) (no written disclosures as to time and place of employment and the like) (for Ramos in 2004 and 2005 and Martinez in 2006);

      c.      29 U.S.C. §§ 1811(a) and 1842 (Paramo not registered properly, and Catalano did not reasonably attempt to verify Paramo's registration) (for Ramos in 2005 and Martinez in 2006); and

      d.      29 U.S.C. § 1821(d)(2) (no written itemized records of the sums paid to Paramo) (for Ramos in 2004 and 2005 and Martinez in 2006).

Previously, the Court granted summary judgment to Plaintiffs as follows:

      a.      29 U.S.C. § 1822(a) (against all Defendants for the $55 weekly meal charge) (Ramos in 2004 and 2005 and Martinez in 2006);

      b.      29 U.S.C. § 1821(d)(1) (against all Defendants for failure to maintain itemized records of the meal charges) (for Ramos in 2004 and 2005 and Martinez in 2006);

      c.      29 U.S.C. § 1821(c) (against Paramo for not complying with the notice requirements for housing providers) (for Ramos in 2004 and 2005 and Martinez in 2006);

       d. 29 U.S.C. § 1821(e) (against Paramo for failing to provide records to Catalano) (for Ramos in 2004 and 2005 and Martinez in 2006); and

       e. 29 U.S.C. § 1811(b) (against Paramo because she used unregistered workers to recruit and transport Ramos and Martinez) (for Ramos in 2004 and 2005 and Martinez in 2006).

    Plaintiffs failed to prove by a preponderance of the evidence the following claims:

       a. 29 U.S.C. § 1822(c) (providing pesticide information);

       b. 29 U.S.C. § 1822(b) (requiring purchase of goods and services from Paramo); and

       c. 29 U.S.C. § 1821(d)(2) (requiring provision of records of withholdings from pay of taxes, Social Security, Medicare, and the like).

    Plaintiffs suffered no actual damages as the result of these violations of AWPA. However, the Court is authorized to impose statutory damages of up to $500 per violation. 29 U.S.C. § 1854(c)(1). Multiple infractions of a single provision of AWPA constitute only one infraction. 29 U.S.C. § 1854(c)(1)(A). However, multiple infractions of a single provision which occurred over separate growing seasons are separate violations. See Rivera v. Adams Packing Ass'n, 707 F.2d 1278, 1283 (11th Cir. 1983). The Court may also consider whether there was any attempt to resolve the claims before result to litigation. 29 U.S.C. § 1854(c)(2).

    Counsel urges the Court to impose damages of $500 per plaintiff per violation. In some instances that is appropriate. The violations directed at Martinez came after Defendants were made aware of Ramos's claims. Moreover, it is axiomatic that ignorance of the laws is no defense and that one may not rely on someone else to meet the law's requirements.

    Nevertheless, the Court already imposed liquidated damages on the NJWHL and FLSA claims for violations of 29 U.S.C. §§ 1821(d) and 1822(a). An additional minimal award will adequately compensate Plaintiffs and deter Defendants on those claims. See Frederick

County Fruit Growers Ass'n v. Dole, 709 F. Supp. 242, 248 (D.D.C. 1989), aff'd, 968 F.2d 1265 (D.C. Cir. 1992) (contract claims provided adequate compensation to farm workers and any additional deterrent effect was considered marginal).  The Court believes some award is necessary to reflect that there were violations.

    Accordingly, judgment will be entered as follows on the AWPA claims:

    a. In favor of Plaintiff Jorge Luis Ramos Ortiz and against Defendants Catalano Farms and Martin Catalano jointly, severally, and in the alternative for the sum of $500 for violation of 29 U.S.C. § 1842 in 2005;

    b. In favor of Plaintiff Jorge Luis Ramos Ortiz and against Carmen Paramo, individually, for the sums of $500 (for violation of 29 U.S.C. § 1811(b) in 2004), $500 (for violation of 29 U.S.C. § 1821(c) in 2004), $500 (for violation of 29 U.S.C. § 1821(e) in 2004), $500 (for violation of 29 U.S.C. § 1811(a) in 2005), $500 (for violation of 29 U.S.C. § 1811(b) in 2005), $500 (for violation of 29 U.S.C. § 1821(c) in 2005), and $500 (for violation of 29 U.S.C. § 1821(e) in 2005), for a total of $3,500;

    c. In favor of Plaintiff Jorge Luis Ramos Ortiz and against Carmen Paramo, Catalano Farms, and Martin Catalano, jointly and severally, for the sums of $1 (for violation of 29 U.S.C. § 1821(d)(1) in 2004), $1 (for violation of 29 U.S.C. § 1822(a) in 2004), $1 (for violation of 29 U.S.C. § 1821(d)(1) in 2005), $1 (for violation of 29 U.S.C. § 1822(a) in 2005), and $500 (for violation of 29 U.S.C. § 1821(a) in 2005), for a total of $504;

    d. In favor of Plaintiff Francisco Martinez and against Defendants Catalano Farms and Martin J. Catalano, jointly, severally, and in the alternative, for the sum of $500 for violation of 29 U.S.C. § 1842;

    e. In favor of Plaintiff Francisco Martinez and against Defendant Carmen Paramo individually, for the sums of $500 (for violation of 29 U.S.C. § 1811(a)), $500 (for violation of 29 U.S.C. § 1811(b)), $500 (for violation of 29 U.S.C. § 1821(c)), and $500 (for violation of 29 U.S.C. § 1821(e)) for a total of $2,000; and

      f. In favor of Plaintiff Francisco Martinez and against Defendants Carmen Paramo, Catalano Farms, and Martin Catalano, jointly, severally, and in the alternative, for the sums of $500 (for violation of 29 U.S.C. § 1821(a)), $500 (for violation of 29 U.S.C. § 1822(a)), and $1 (for violation of 29 U.S.C. § 1821(d)(1)) for a total of $1,001.

  **E.** **Total Judgments**

  The total judgments are as follows:

    1. In favor of Jorge Luis Ramos Ortiz against Defendants Carmen Paramo, Martin J. Catalano Farms, LLC, and Martin Catalano, jointly, severally, and in the alternative, the amount of $15,980; in favor of Plaintiff Jorge Louis Ramos Ortiz and against Defendant Carmen Paramo, individually, the amount of $3,500; and in favor of Plaintiff Jorge Luis Ramos Ortiz, and against Defendants Martin J. Catalano Farms, LLC and Martin Catalano, jointly, severally, and in the alternative, the amount of $500;

    2. In favor of Plaintiff Francisco Martinez and against Defendants Carmen Paramo, Martin J. Catalano Farms, LLC, and Martin Catalano, jointly, severally, and in the alternative, the amount of $7,001; in favor of Plaintiff Francisco Martinez and against Defendant Carmen Paramo, individually, the amount of $1,001; in favor of Plaintiff Francisco Martinez and against Defendants Martin J. Catalano Farms, LLC, and Martin Catalano jointly, severally, and in the alternative, the amount of $500; and

    3. Plaintiffs are also entitled and shall be awarded reasonable counsel fees and costs of suit.  A Judgment will be entered reflecting this Opinion.


Dated: 12-1-2009             /s/ Robert B. Kugler
                     ROBERT B. KUGLER
                     United States District Judge